IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| QUINTEZ TALLEY, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 2: 16-cv-1318 |
| | ) |
| v. | ) United States Magistrate Judge |
| | ) Cynthia Reed Eddy |
| ROBERT D. GILMORE, et al, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM OPINION AND ORDER[1]

## I. Introduction

Presently pending before the Court for disposition are the following:

(1) The motion for summary judgment (ECF No. 51) filed by the Commonwealth Defendants.[2] Plaintiff has filed a response in opposition (ECF No. 84). For the reasons that follow, the motion will be granted in part and denied in part.

(2) The motion for summary judgment (ECF No. 63) filed by Defendant Ankrom.[3] Plaintiff has filed a brief in response (ECF No. 80), to which Defendant Ankrom has filed a reply brief. (ECF No. 103). For the reasons that follow, the motion will be granted in part and denied in part.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including trial and the entry of a final judgment. *See* ECF Nos. 13, 14, and 15.

[2] The Commonwealth Defendants are Robert D. Gilmore, McCombie, M. Dialesandro, Caro, Shelly Mankey, John E. Wetzel, J. Burt, Wettgen (sued as "Conney," her first name), and the Department of Corrections.

[3] Discrepancies exist about the spelling of this Defendant's name. The Court adopts the spelling provided by Defendant in her filings and the mental health records which are part of the summary judgment record.

(3) The motion for summary judgment filed by Plaintiff. (ECF No. 75). Both the Commonwealth Defendants and Defendant Ankrom filed briefs in opposition (ECF Nos. 93 and 106), to which Plaintiff filed reply briefs. (ECF Nos. 96 and 109). For the reasons that follow, the motion will be denied.

## II. Background

Plaintiff, Quintez Talley ("Talley"), is a *pro se* state prisoner in the custody of the Pennsylvania Department of Corrections ("DOC") and is currently incarcerated at the State Correctional Institution at Fayette. Named as defendants are the DOC, John E. Wetzel, Secretary of DOC; and eight (8) individuals who work at SCI-Greene.

Talley's lawsuit arises from the decision to have Talley's mental health stability code changed from a "D-Code," meaning seriously mentally ill, to a "C-Code," meaning receiving treatment for mental health but not seriously ill. The change in his stability code resulted in Talley no longer being eligible for certain privileges and programs available to other prisoners on the Restricted Housing Unit ("RHU"). Talley alleges that each of the Defendants were involved to varying degrees in the decision to change his stability code. He alleges that the Defendants conspired to change his classification and that the change in classification was in retaliation or punishment for him filing a grievance about being denied out-of-cell time on May 11, 2015. Amended Complaint, at ¶¶ 37, 38 (ECF No. 17).

Talley also asserts that his constitutional rights under the Eighth Amendment were violated by the Psychiatric Review Team ("PRT")[4] because he was left "in the RHU for long

---

[4] In 2015, the PRT consisted of Defendant Burt, who at the relevant time was a Psychological Service Specialist; Defendant Wettgen, a psychiatric nurse; and Defendant Ankrom, a certified registered nurse practitioner. The PRT "reviews the cases of those inmates who experience adjustment or behavioral difficulties related to emotional problems and who require more in-depth evaluation, and closer monitoring and support." DOC's Responses to

periods of time for symptoms associated to his SMI" and that the Program Review Committee ("PRC"),[5] and Defendants Gilmore, Wetzel, and DOC failed to supervise the PRT members. *Id.* at ¶¶ 34-36.

Talley also asserts that his rights under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act were violated because he often was denied out-of-cell programming due to lack of available seating on the pod. *Id*. at ¶¶ 32-33.

Following the close of discovery, the parties filed the instant cross motions for summary judgment. The issues have been fully brief and the factual record developed. The motions are ripe for disposition.

## III. Standard of Review

Summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it 'affect[s] the outcome of the suit under the governing law'." *Bland v. City of Newark,* Nos. 17-2228, 17-2229, -- F.3d ---, 2018 WL 3863378, at *3 (3d Cir. Aug. 15, 2018) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). In deciding a motion for summary judgment, the Court's function is not to weigh the evidence, to determine the truth of the matter, or to evaluate credibility. *See Montone v. City of Jersey City*,

---

Int., at 4 (ECF No. 54-1, at 242). The diagnosis on a stability code is made either by a psychiatrist or a mid-level practitioner acting in concert with the psychiatrist.

[5]     In 2015, the PRC consisted of Defendants Burt, Caro, Leggett, DiAlessandro, Mackey, McCombis, and Zaken. The PRC is "[a] committee of three staff members who conduct Administrative Custody Hearings, periodic reviews, make decisions regarding continued confinement in the Restricted Housing Unit (RHU), and/or Special Management Unit (SMU), Diversionary Treatment Unit (DTU) and hear all first level appeals of misconducts. DOC's Responses to Int., at 3 (ECF NO. 54-1, at 242). The PRC reviews each inmate in the DTU weekly. *Id*. The PRT provides the PRC with its findings and then the PRC decides housing and privileges.

3

709 F.3d 181 (3d Cir. 2013). Rather, "[i]n determining whether a genuine dispute of material fact exists, [the Court] view[s] the underlying facts and draw[s] all reasonable inferences in favor of the party opposing the motion." *Bland*, 2018 WL 3863378 at *3 (citing *Dougherty v. Sch. Dist. of Phila.*, 772 F.3d 979, 986 (3d Cir. 2014)).

Notably, these summary judgment rules do not apply any differently when there are cross-motions pending. *Lawrence v. City of Phila.,* 527 F.3d 299, 310 (3d Cir. 2008). As stated by the Court of Appeals for the Third Circuit, " ' [c]ross-motions are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.' " *Id.* (quoting *Rains v. Cascade Indus., Inc*., 402 F.2d 241,245 (3d Cir. 1968)).

## IV. Discussion

### A. *Exhaustion*

Before turning to the merits, the Court must first decide whether Talley has exhausted his administrative remedies in accordance with the mandate of the Prison Litigation Reform Act of 1995 (the "PLRA"), 42 U.S.C. § 1997e(a), which provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

The requirement that a prisoner exhaust administrative remedies applies to all prisoner suits regarding prison life, including those that involve general circumstances as well as particular episodes. *Porter v. Nussle*, 534 U.S. 516 (2002). The exhaustion requirement is not a technicality, rather it is a federal law which federal district courts are required to follow. *Nyhuis*

4

*v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000). Whether a prisoner has exhausted administrative remedies is a question of law that is to be determined by the court, even if that determination requires the resolution of disputed facts. *See Paladino v. Newson*, 885 F.3d 203, 210 (3d Cir. 2018) (citing *Small v. Camden County*, 728 F.3d 265, 268 (3d Cir. 2013)); *see also Drippe v. Tobelinski*, 604 F.3d 778, 781 (3d Cir. 2010).

The PLRA itself does not have a "name all defendants" requirement. *Byrd v. Shannon*, 715 F.3d 117, 127 (3d Cir. 2013) (citing *Jones v. Bock*, 549 U.S. 199, 217 (2007)). However, the United States Court of Appeals for the Third Circuit has found that where an inmate fails to specifically name the individual in the grievance or where the grievance is untimely or otherwise defective, claims against an accused individual are procedurally defaulted. *Spruill v. Gillis,* 372 F.3d 218, 234 (3d Cir. 2004). Similarly, in order to properly exhaust as to a particular issue or claim, the inmate-plaintiff is required to name that issue or claim in the operative grievance or else the grievance is procedurally defective as to that issue or claim. *Boyd v. U.S.*, 396 F. App'x 793, 796 (3d Cir. 2010); *Stewart v. Kelcher*, 358 F. App'x 291, 296-97 (3d Cir. 2009).

The parties do not dispute that two grievances filed by Talley, Grievance No. 566472 and Grievance No. 567427, are the relevant documents in analyzing the exhaustion issue. In his first grievance, filed on May 12, 2015, Grievance number 566472, Talley complained about a denial of out-of-cell programming on May 11, 2015. Talley's grievance statement is as follows:

> On 5/11/15 I informed C/O Workman that I wished to go to my D Stability group. Sometime after 11 am (roughly 11:15) C/O Workman relayed to me that he had been told that psych. Burt had informed the c/o's that I am a C code now. To this I produced my 5/6/15 DC-141, Part 4 "PRC Progress Report and Specific Rationale for Continued Placement or for Transfer" Sheet; a documentation that was created at SCI-Greene while I was ATA at SCI-ROCKVIEW!; signed by Warden Gilmore on 5/7/15, clearly stating that I was a D-ROSTER INMATE! I initially gave it to C/O Brooks (who was G/B's pod officer on 5/11/15). He

> returned and said that he'd given it to Sgt. The sergeant would come to my door and tell me even with the DC 141, Part 4 from 5/6/15 (signed by Warden on 5/7/15) in his hand that psych Burt had told him personally that I was now a C-code [stability]. I said this couldn't be possible. I also told the Lt. that was over here (G/B) [G-block] on 5/11/15; who had come to my door under the impression that I was suicidal. I asked him to speak with psych Burt. Even Ericksen (D. stability group supervisor) came to my door and told me that he was informed that psych Burt had told someone who told someone that I was now a C stability. All in all, even while I informed the authorities I wanted my D stability group - I was denied.

(ECF. No. 54-1 at 226; ECF No. 77-10 at 1). Talley also stated in the grievance, "I wish for the racial oppression to cease and for the authorities who perpetuate it to be made to pay a punitive monetary sum of $10,000 . . . ." *Id*.

The second grievance, Grievance number 567427, was filed by Talley on May 18, 2015. In this grievance, Talley complained that his D stability code was taken from him in retaliation for filing Grievance number 566472. Talley's grievance statement is as follows:

> I wrote a grievance on the fact that I was denied my D Stability group on 5/11/15. As a result of writing grievance, within a matter of days my D Stability was taken from me.
>
> I have addressed the denial of groups and groups (D Stab.) being used as a means of punishment several times with PRC. For addressing my concerns through grievance form, I was suddenly taken off my D Stability as a clear means of retaliation by the PRT. These are the same folks who have failed to get me any sort of relief for the 6 months that I've been at Greene!

(ECF No. 54-1, at 232; ECF No. 77-11 at 1). Both grievances were denied at all levels of administrative review.

Defendants do not dispute that Talley exhausted his administrative remedies with respect to his retaliation claim. Instead, Defendants seek summary judgment on the retaliation claim on the merits, as discussed below.

Defendants Gilmore, Wetzel, and DOC argue that Talley's claims against them must fail and summary judgment should be granted in their favor because Talley failed to name them in

6

either of the two relevant grievances. All the Defendants argue that all claims (the deliberate indifference, conspiracy, ADA, and Rehabilitation Act claims), with the exception of the retaliation claim, must fail and summary judgment should be entered because Talley did not identify these claims in either of his grievances.

Talley responds that he grieved in compliance with the PLRA and that Defendants have failed to prove their affirmative defense of failure to exhaust. Talley does not dispute that his grievances do not identify certain individuals and certain claims, but he argues that he included references to Defendants Gilmore, Wetzel and the DOC and also specifically stated that being denied his group time was a "clear violation of my ADA rights" when he appealed the denial of his grievances. (ECF No. 77-10 at 5; ECF No. 77-11 at 5). Further, Talley argues that the Chief Grievance Officer in the Final Appeal Decision acknowledged that he had brought a "deliberate indifference claim," because the decision states "No evidence of neglect or <u>deliberate indifference</u> has been found." (emphasis added) (ECF No. 54-1 at 230; ECF No. 54-1 at 237; ECF No. 77-10 at 9; ECF No. 77-11 at 9).

The Court finds that Talley's reliance on the language in his grievance appeals is misplaced. The critical inquiry for purposes of determining exhaustion under the PLRA is to determine who was named in the grievance and what claims were mentioned in the grievance. The inmate-plaintiff is required to name that issue or claim or future defendant in the operative grievance. *Boyd v. U.S.,* 396 F. App'x 793, 796 (3d Cir. 2010); *Spruill*, 372 F.2d at 234 (inmate-plaintiff is required to name individuals who are later sued in grievance or else grievance is procedurally defective as to those individuals.)

Further, prison grievance procedures supply the yardstick for measuring procedural default. *Spruill,* 372 F.3d at 227-32 (3d Cir. 2004); *see also Jones v. Bock*, 549 U.S. 199, 218

(2007) ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."). Under the Pennsylvania DOC Policy Statement and Procedures Manual that was effective May 1, 2015, Form DC-804, Part 1, is the "Official Inmate Grievance." DC-ADM 804, Section 1, (A)(12)(b) specifically instructs that "The inmate shall identify individuals directly involved in the event(s)" and 804(A)(12)(c) instructs that "The inmate shall identify any claims he/she wishes to make concerning violations of Department directives, regulations, court orders or other law." Further, DC-ADM 804, Section 2, (A)(1)(c) states that "[O]nly an issue that was raised for initial review . . . may be appealed." Including new individuals and claims in his appeal, that were not included in the original grievance therefore is not sufficient to satisfy the requirements of proper exhaustion.

Further, simply because the term "deliberate indifference" is used by the Chief Grievance Officer in the Final Appeal Decision does not persuade the Court that Talley brought an Eighth Amendment deliberate indifference claim in his original grievances. No where in the original grievances is such a claim mentioned.

The Court finds that Defendants Gilmore, Wetzel, and DOC are not named in either of the two relevant grievances. *See* DC-ADM 804 ("The inmate shall identify individuals directly involved in the event(s)."). Therefore, because Talley has not exhausted his administrative remedies as to these three defendants, summary judgment will be entered in their favor.

Similarly, the Court finds that there is no complaint in Talley's grievances about violations of the ADA or Rehabilitation Act, deliberate indifference (Eighth Amendment), or conspiracy in either of these two grievances. His failure to include those complaints in his grievances is fatal to those claims brought in this lawsuit. "It is beyond the power of [any] court

. . . to excuse compliance with the exhaustion requirement whether on the ground of futility, inadequacy, or on any other basis." *Jackson v. Beard*, 2013 WL 5176741 (M.D. Pa. Sept. 12, 2013) (citations omitted). Accordingly, summary judgment will be entered in favor of Defendants based on Talley's failure to exhaust his administrative remedies with respect to his ADA, Rehabilitation Act, Eighth Amendment, and conspiracy claims.

The Court now turns to Talley's First Amendment retaliation claim, which is the only remaining claim before the Court.

**B.  Retaliation Claim**

Defendants argue that they are entitled to summary judgment on Talley's retaliation claim.

It is well-settled that "[g]overnment actions, which standing alone, do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). In order to state a prima facie case of First Amendment retaliation, a prisoner plaintiff must show:

1) The conduct in which he was engaged was constitutionally protected;

2) He suffered "adverse action" at the hands of prison officials; and

3) His constitutionally protected conduct was a substantial or motivating factor between the exercise of his constitutional rights and the adverse action.

*Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2004). If a plaintiff is able to meet his prima facie case, the burden then shifts to the defendants to prove by a preponderance of the evidence that they would have made the same decision absent the protected conduct for reasons reasonably related to penological interest. *Rauser v. Horn*, 241 F.3d 330, 334 (3d Cir. 2001).

Defendants concede that Talley can prove the first[6] and second[7] elements of his retaliation claim. Defendants focus their argument on the third prong asserting that Talley cannot show that the grievance filed on May 12, 2015, was a substantial and motivating factor for the change in his mental stability code.

To satisfy the third prong of his retaliation claim, Talley must show a causal connection between his constitutionally protected activity and the adverse action he allegedly suffered at the hands of the defendants. "To establish the requisite causal connection a plaintiff must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. *Lauren W. x rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267-68 (3d Cir. 2007). "In the absence of that proof the plaintiff must show that from the 'evidence gleaned from the record as a whole,' the trier of the fact should infer causation." *Id.* (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)). The Court of Appeals for the Third Circuit has emphasized that courts must be diligent in enforcing these causation requirements. *Id*.

Here, although Defendants dispute the evidence,[8] the Court finds that Plaintiff has demonstrated the required causal connection between his protected activity and the adverse

---

[6] The filing of grievances or a lawsuit satisfies the constitutionally protected conduct prong of a retaliation claim. *Rauser*, 241 F.3d at 333.

[7] To show the "adverse action" necessary to fulfill the second prong, the prisoner plaintiff must demonstrate that defendants' actions were "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." *Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000).

[8] For example, Defendants argue that the premise of Talley's retaliation claim is false because contrary to Talley's claims, he was not denied programming on May 11, 2015. He was offered it and refused. This is a factual issue which the jury must decide.

action. The following is a summary of Talley's mental health treatment history from the time he entered SCI-Greene until his stability code was changed on May 13, 2015.

On November 18, 2014, Talley was transferred from SCI-Waymart to SCI-Greene. He came to SCI-Greene with a mental health stability code of D ("D-Code), which means that the prisoner meets the criteria for a serious mental illness. ("SMI"). According to Talley, he had a stability D-Code since the beginning of his DOC incarceration on October 31, 2012. (ECF No. 77-26 at 2.) A prisoner is considered to have a SMI if the Psychiatric Review Team ("PRT") determines that the prisoner:

> (1) has a current diagnosis or a recent significant history of any of the DSM5 diagnoses: (a) Substance-Induced Psychotic Disorder; (b) Schizophreniform Disorder; (c) Schizophrenia; (d) Delusional Disorder; (e) Brief Psychotic Disorder; (f) Schizoaffective Disorder; (g) Other Psychotic Disorders; (h) Bipolar I and II; and (i) Major Depressive Disorders;
>
> (2) has been diagnosed by PRT with DSM5 disorders that are commonly characterized by breaks with reality, or perceptions of reality, that lead the individual to experience significant functional impairment involving acts of self-harm or other behaviors that have a seriously adverse effect on life or on mental or physical health;
>
> (3) has been diagnosed by PRT with Intellectual Disability, a dementia, or other cognitive disorders that result in a significant impairment involving acts of self-harm or other behaviors that have seriously adverse effect on life or on mental or physical health; or
>
> (4) has been sentenced to Guilty But Mentally Ill.

(ECF No. 54-1, Exh. 8 at 242-54.) As a D-Code prisoner, Talley was entitled to certain privileges and programming not available to other prisoners on the RHU. For example, prisoners with a D- Code are housed on the diversionary treatment unit ("DTU") and while DTU is a type of restricted housing, prisoners housed on it are allowed 20 hours a week of out-

of-cell time.[9]  Ten hours are structured, such as behavioral management programs, and ten hours are unstructured. C-Code prisoners, however, may be offered some out-of-cell programming, but such programming is not required, nor is the 20 hours a week of out-of-cell time required.

On Talley's initial SCI-Greene clinical staff evaluation conducted on November 20, 2014, Defendant Burt noted that Talley had a "MHSR of 'D'." (ECF No. 54-1 at 2.) Talley's stability code remained a "D-Code" until May 12, 2015, the day after he filed a grievance. Talley's mental health records reflect that from November 2014 through May 12, 2015, he received at least three misconducts (ECF No. 54-1 at 14, 60, 86), was oftentimes placed in a Psychiatric Observation Cell ("POC"), and was temporarily transferred to SCI-Benner and SCI-Rockview on multiple occasions. *See* Pennsylvania Department of Correction Moves Report, ECF No. 42-14. The summary judgment evidence also reflects that it was first reported that Talley did not have a serious mental illness during his March 2015 incarceration at SCI-Rockview where it was also noted that Talley was making "manipulative suicide threats." (ECF No. 54-1 at 86, 91). However, Talley's stability code was not changed at that time and it remained a "D-Code."

Talley returned to SCI-Greene on or about April 20, 2015. He reported to be suicidal and was brought to a POC. The next day, Defendant Burt noted that Talley's threats of self-harm "appeared to be an attempt to manipulate staff to give him his [stored] property." *Id*. at 123. Again, Talley's stability code was not changed and it remained a "D-Code." On April 23, 2015, Talley was released from a POC and transferred to RHU. On April 27, 2015, Talley again claimed to be suicidal and the Outpatient Psychiatry Progress Note by Dr. Hylbert and Dr.

---

[9] If there is not room on the DTU, the D-stability prisoners can be housed in the RHU, but will be afforded the same twenty hours a week of out-of-cell time.

Pillai noted that that this was a routine behavior for Talley when he wanted to avoid the RHU. *Id*. at 127. The following day, on April 28, 2015, Talley was again taken to a POC and Defendant Burt's mental health contact note states that Talley was attempting to manipulate staff to get his needs met. *Id.* at 130. Throughout the month of April, Talley's stability code was not changed and remained a "D-Code."

On May 11, 2015, Talley alleges he was denied his out-of-cell programming due to lack of available seating. When Talley asked to speak with a sergeant, he was told that he no longer was a "D-Code" and that Defendant Burt had informed the corrections officers that Talley was a "C-Code" and not entitled to any out-of-cell time. Talley informed the corrections officer that he had not been notified of any change in his stability code. The next day, May 12, 2015, Talley filed Grievance No. 566472 complaining about the denial of his out-of-cell time. Talley discussed his grievance with the PRC that same day. The summary judgment record reflects that on May 12, 2015, at 12:38, Defendant Burt noted on a Mental Health Contact Form that Talley was agitated, was to remain on DTU, and that Talley's current stability code was "D". (Sealed ECF No. 59-1, at 133). The following day, on May 13, 2015, the Outpatient Psychiatry Progress Note written by Defendant Ankrom noted that the PRT had a discussion with Talley about having an RHU time cut. Defendant Ankrom concluded with Dr. Hylbert's consent that "Significant mental illness isn't present. Change to C Code." *Id*. at 134-36. On or about May 14, 2015, Talley was removed from the DTU and transferred to the RHU. Pl's Br. at 7 (ECF No. 84).

Defendants first argue that the premise of Talley's retaliation claim is false because he was in fact offered programming on May 11, 2015, but he refused it. In support of this argument, Defendants rely upon a document entitled "Structured / Non-Structured Out of Cell

13

Activity," which reflects that on May 11, 2015, Talley was offered 2 hours of structured group time, and he did not "accept" the offer.[10] Next, Defendants argue that Talley's stability code changed from a "D-Code" to a "C-Code" based on a diagnosis of "unspecified impulse control disorder, which is not a serious mental illness and so does not qualify as a D stability code," Decl. of John Burt, ¶ 8 (ECF No 59-1), and because Talley had a history of attempting to manipulate staff to get what he wanted through false claims of suicidal intent. Defendant Ankrom states that Talley's stability code was changed because

> There was a consensus among mental health providers that Plaintiff was not experiencing a serious mental illness and did not require a "D" stability code. The decision to adjust Plaintiff's stability code would have been made regardless of whether or not a grievance was filed. Accordingly, Plaintiff's retaliation claim cannot survive summary judgment.

Def. Ankrom's Br. at 10 (ECF No. 66).

And third, Defendants argue that at the time Talley's stability code changed, neither Defendant Burt nor Defendant Ankrom were aware of the grievance filed by Talley on May 12, 2015.

In opposition to the motion for summary judgment, Talley responds that his diagnosis has remained unchanged since February 20, 2014. In support of his argument, Talley relies upon a March 2014 DOC report which states that since February 20, 2014, Talley has been diagnosed with an "impulse control disorder." *See* ECF No. 77-26 at 2. Talley argues that the May 2015 change in his stability code had nothing do to due with a change of diagnosis, but rather that his stability code was changed in retaliation for filing Grievance number 566472.

---

[10] This exhibit also reflects that on May 12, 2015, Talley was offered and accepted four hours of structured group time; on May 13, 2015, he was offered and accepted two hours of structured group time; and on May 14, 2015, he was offered and accepted two hours of structured group time. (ECF No. 54-1 at 224).

14

Talley also disputes that Defendant Burt was not aware that he had filed a grievance. According to Talley, on May 12, 2015, during his weekly meeting with the PRC, of which Burt was a member, he told the PRC that he had been refused his "D" stability group time the previous day, that he had filed a grievance concerning the matter, and that it was Defendant Burt who falsely told the corrections officer that Talley's stability code had changed. Defendant Burt was the liaison between the PRC and PRT. On May 13, 2015, the PRT met with Talley and changed his stability. (Sealed No. 59 at 136). The following day, May 14, 2015, Talley was removed from the DTU and transferred to the RHU. As noted *supra*, PRC decides housing and privileges.

Given the sequence of events and arguments of the parties, the Court finds that summary judgment should be denied on Talley's retaliation claim as there are disputed genuine issues of material fact, which if resolved in Talley's favor, would allow a reasonable factfinder to conclude that Talley's constitutional rights were violated.

## V. Conclusion

For all these reasons, the parties' cross motions for summary judgment will be denied in part and granted in part. The parties are in disagreement about the issues raised by Talley's retaliation claim, which results in the existence of genuine issues of material fact. It is for a jury to decide these factual issues.

Summary judgment will be granted as to Talley's claims against Wetzel, Gilmore, and DOC and on his claims for conspiracy and violations of the Eighth Amendment (deliberate indifference), and violations of the Americans with Disabilities Act and the Rehabilitation Act, for failure to exhaust administrative remedies.

An appropriate Order follows.

## ORDER OF COURT

**AND NOW** this 20th day of August, 2018, upon consideration of the parties' cross motions for summary judgment, for the reasons stated in the accompanying Memorandum Opinion, **IT IS HEREBY ORDERED** that summary judgment is **GRANTED** on all claims against Defendants Gilmore, Wetzel and DOC and on Talley's claims for conspiracy, and violations of the Eighth Amendment (deliberate indifference), and violations of the Americans with Disabilities Act and the Rehabilitation Act, for failure to exhaust administrative remedies.

**IT IS FURTHER ORDERED** that summary judgment is **DENIED** on Talley's retaliation claim.

/s Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: QUINTEZ TALLEY
KT 5091
SCI Fayette
48 Overlook Drive
LaBelle, PA 15450-0999
(via U.S. First Class Mail)

All counsel of record
(via ECF electronic notification)