# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| QUINTEZ TALLEY, | ) |
| --- | --- |
| | ) |
| Plaintiff, | ) |
| | ) 2:16-cv-01318 |
| vs. | ) |
| | ) Chief United States Magistrate Judge |
| | ) Cynthia Reed Eddy |
| J. BURT, ANKRAM, and WETTGEN, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM ORDER

**AND NOW**, this 7th day of November, 2019, presently for consideration before the Court are the following:

(1) The parties' cross-motions in limine to exclude each other's expert witnesses (ECF Nos. 173 and 184);

(2) Plaintiff's motion in limine to exclude mental health records (ECF No. 175);

(3) Plaintiff's motion in limine to exclude evidence of other crimes, wrongs, or other acts (ECF No. 178);

(4) Plaintiff's motion in limine to exclude undisclosed expert testimony (ECF No. 180);

(5) Plaintiff's motion in limine to exclude evidence regarding Plaintiff's other lawsuits and complaints (ECF No. 182);

(6) Defendants' motion in limine to preclude award of compensatory damages (ECF No. 169);

(7) Defendants' motion in limine to preclude any evidence of the Disability Rights Network Settlement Agreement and the Testimony of Angus Love and Alexandra Morgan-Kurtz (ECF No. 170);

1

(8) Defendants' motion in limine to preclude testimony of Department of Corrections Secretary John Wetzel (ECF No. 171);

(9) Defendants' motion in limine to allow testimony and evidence of Plaintiff's misconducts (ECF No. 172);

(10) Defendants' motion to preclude testimony of Major Curtis Grice and Lt. Matthew Luciano (ECF No. 177);

(11) Defendants' motion in limine to preclude punitive damages (ECF No. 186); and

(12) Defendants' motion in limine to preclude any evidence of the Department of Justice Investigation (ECF No. 190).

The motions are fully briefed and ripe for disposition. Each motion will be address in seriatim.

1. <u>Plaintiff's motion in limine to exclude purported expert opinions of Jason Roof, M.D. (ECF No. 173) and Defendants' motion in limine to preclude the trial testimony of Plaintiff's expert Harry Krop, Ph.D. (ECF No. 184)</u>.

The parties have filed cross-motions in limine to exclude each other's expert witnesses. Under Federal Rule of Evidence 702, courts must allow expert testimony when "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." These requirements are often referred to in shorthand as "qualification, reliability, and fit." *See, e.g., In re Unisys Sav. Plan Litig.*, 173 F.3d 145, 156 (3d Cir.1999). Under the rule announced in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) and expanded in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), district courts must ensure that experts—scientific and otherwise—will offer testimony that is methodologically sound <u>and</u> relevant to the facts of the case before admitting their expert testimony. *Daubert*, 509 U.S. at 590–91; *Kumho*, 526 U.S. at 149.

After reviewing the expert reports and the arguments of counsel, the Court finds that it is clear from the reports that the testimony of the proposed experts are not relevant and, therefore, will not be helpful to resolving this case.

Defendants seek to preclude the testimony of Plaintiff's expert, Harry Krop, Ph.D., who opines "regarding the differential diagnosis of Plaintiff's mental health conditions," ECF No. 199 at 2, and as to what Plaintiff's mental health diagnosis should have been in 2015, based on an evaluation of Plaintiff conducted on May 17, 2019. The Court agrees with Defendants that such an opinion is not relevant, is speculative and confuses the issue involved in the case. The only issue for the jury to consider is whether or not Defendants retaliated against Plaintiff by adjusting his stability code after Plaintiff filed a grievance. There is no allegation that Defendants in this case incorrectly diagnosed Plaintiff or failed to provide Plaintiff with proper treatment. Allowing Dr. Krop to opine as to Plaintiff's diagnosis runs the danger of misleading the jury, confusing the issues, and undue delay pursuant to Fed. R. Evid. 403.

Similarly, Plaintiff seeks to preclude the testimony of Defendants' expert, Jason Roof, M.D., who opines based on his review of Plaintiff's medical records that Plaintiff did not suffer from a mental illness as defined by the DOC Mental Health Policy and thus did not met the criteria for D-Code inmates. However, as the Court of Appeals for the Third Circuit has recently stated, "[w]hat is good for the goose is good for the gander." *Shifflett v. Korszniak*, 934 F.3d 356, 367 (3d Cir. 2019). Again, this case does not involve a question of whether or not Plaintiff was misdiagnosed or whether or not Plaintiff received appropriate mental health care. This only issue for the jury is whether or not Defendants retaliated against Plaintiff by adjusting his stability code after he filed a grievance. Dr. Roof's proffered testimony suffers from the same infirmities as that of Dr. Krop's proffered testimony. To allow Dr. Roof to opine as to whether or not Plaintiff

warranted a D Stability Code runs the danger of misleading the jury, confusing the issues and undue delay pursuant to Fed. R. Evid. 403.

For all these reasons, the parties' cross-motions in limine to exclude each other's expert witnesses are **GRANTED**.

2. <u>Plaintiff's motion in limine to exclude mental health records (ECF No. 175).</u>

Plaintiff requests that the Court exclude all of Plaintiff's mental health records pre-dating May 13, 2015 as being irrelevant and unduly prejudicial and all his mental health records post-dated May 13, 2015 as being irrelevant. Plaintiff also argues that his mental health records are subject to the psychotherapist-patient privilege. Finally, Plaintiff asserts that the records should be excluded for not being produced during discovery.

Defendants respond that Plaintiff put his mental health at issue by claiming that he was seriously mentally ill and therefore should not have been reclassified as a C stability code and that such reclassification was retaliatory. Defendants also agree that they will be offering limited testimony of the records that are dated "soon after May13, 2015," including Dr. Hylbert's note on May 28, 2015, that Plaintiff should remain on C code. (ECF No. 192, p. 1). They also argue that such evidence is highly relevant to Plaintiff's claim that his stability code change was improper. They argue that the records are not unfairly prejudicial and that Plaintiff waived any privilege he may have in his mental health records by putting his mental health stability code at issue in this case and by filing certain of those records on the docket of this case. They also assert that the mental health records were provided to the Plaintiff once counsel was appointed to represent him.

The Court agrees with Defendants. Plaintiff's mental health was put at issue in this case. Defendants' defense in this case is that the stability code change was not retaliatory but was based on Plaintiff's mental health which is reflected in his mental health records. The mental health

4

records prior to May 13, 2015 and closely thereafter are therefore relevant to the case. While Fed. R. Evid. 403 allows the court to exclude relevant evidence that is unfairly prejudicial, these records are not unfairly prejudicial as they go directly to the issue in this case. Plaintiff's psychotherapist-patient privilege is waived as Plaintiff placed his mental health at issue and personally filed portions of his mental health records on the docket. Finally, the mental health records were produced to Plaintiff's counsel in accordance with the Court's order.

Plaintiff's motion to exclude mental health records is **DENIED**.

3. Plaintiff's motion in limine to exclude evidence of other crimes, wrongs, or other acts (ECF No. 178).

Plaintiff seeks to exclude evidence of other crimes, wrongs, or other acts pursuant to Fed. R. Evid. 404(b)(2). Plaintiff argues that his institutional misconducts and prior convictions have no bearing on the issue before the Court and that his misconducts pose a high risk of unfair prejudice and substantially outweigh any probative value. Defendants agree that they will not present any evidence of Plaintiff's convictions, sentences, or length of incarceration as they are not relevant; however, they argue that Plaintiff's misconduct charges are relevant as they provide evidence of the motive for Plaintiff's outbursts to try to convince mental health practitioners and staff members that he is seriously mentally ill. (ECF No. 193, p. 2). If Plaintiff is found to be seriously mentally ill, the type of restrictive housing he can be placed in is restricted compared to inmates who are not seriously mentally ill and he could avoid being placed in the RHU if found to be seriously mentally ill. They argue that the evidence is not offered as character evidence pursuant to Fed. R. Evid. 404 or 405, but rather would be offered as motive evidence for Plaintiff to "fake[] a serious mental illness." *Id*. at 3.

Fed. R. Evid. 404(b) prohibits the use of a crime, wrong, or other act to prove a person's character. Fed. R. Evid. 405 provides methods of proving character. Defendants are not

offering Plaintiff's misconduct as evidence of Plaintiff's character, but as evidence of an explanation of Plaintiff's actions that could otherwise be construed as serious mental illness. Defendants considered Plaintiff to be "malingering" or "faking" certain symptoms of serious mental illness. The misconducts are relevant to Defendants' defense of this case. While the evidence may be prejudicial under Rule 403, it is not unduly prejudicial. It has a proper evidentiary purpose under Rule 404(b) and is of such probative value as to outweigh prejudice to Plaintiff. See *United States v. Smith*, 725 F.3d 340 (3d Cir. 2013)(citing *Huddleston v. United States*, 485 U.S. 681 (1988)).

Plaintiff's motion in limine to exclude evidence of other crimes, wrongs, or other acts is **GRANTED in part and DENIED in part**. Any evidence of Plaintiff's prior convictions, sentences, or length of incarceration is excluded from evidence. Any misconducts relied upon by Defendants in making the determination of whether Plaintiff was seriously mental ill up until May 14, 2015 is admissible. Plaintiff may submit a proposed limiting jury instruction.

4. <u>Plaintiff's motion in limine to exclude undisclosed expert testimony (ECF No. 180).</u>

Plaintiff seeks to exclude any undisclosed expert testimony such as testimony from Plaintiff's treating physicians. Defendants respond there is no undisclosed expert testimony. Defendants' expert's report has been disclosed to Plaintiff. . (ECF No. 191, p. 1). Defendants also assert that Plaintiff's treating physicians, mental health providers and the Defendants themselves will be primarily called as fact witnesses to testify about Plaintiff's mental health treatment.

To the extent that Plaintiff is arguing that such facts witnesses should not be allowed to provide an opinion as to Plaintiff's mental health status, Fed. R. Evid. 701 allows a lay witness "with firsthand knowledge" to offer " an opinion akin to expert testimony in most cases, so

long as the trial judge determines that the witness possess sufficient and relevant specialized knowledge or experience to offer the opinion." *Wilburn v. Maritrans GP, Inc.*, 139 F.3d 350, 356 (3rd Cir. 1998); *Walker v. Mankey*, No. 14-1504 (W.D. Pa. 2018)(M.J. Lenihan) at ECF No. 344). Plaintiff is challenging the reason that Defendants changed his stability code and Defendants can testify as to the reasons for their determination/opinion that the stability code was changed. These witnesses will not be asked to answer hypothetical questions, but will be given an opportunity to testify to the reasons for their actions in changing Plaintiff's stability code.

Plaintiff's motion in limine to exclude undisclosed expert testimony is **DENIED**, as there is no undisclosed expert testimony.

5. Plaintiff's motion in limine to exclude evidence regarding Plaintiff's other lawsuits and complaints (ECF No. 182).

**GRANTED**, as unopposed. (ECF No. 189).

6. Defendants' motion in limine to preclude award of compensatory damages (ECF No. 169).

Defendants seek to preclude an award of compensatory damages arguing that Plaintiff has not suffered any physical damages by reason of the reclassification of his mental stability code, but "[r]ather the only injury he suffered was the mental or emotional harm allegedly caused by the loss of certain privileges to inmates who have a D mental health stability code that may not be available to inmates who have a C mental health stability code." (ECF No. 169, at 2).

Plaintiff responds that "he is seeking compensatory damages for calculable and ascertainable loss of D-Code privileges as a result of the Defendants violating his First Amendment rights - not just emotional or mental harm." (ECF No. 196 at 4). Specifically, Plaintiff argues that he is entitled to $75,000 in compensatory damages jointly and severally

7

against the three defendants because,

> [w]hen Defendants abruptly changed Mr. Talley's stability code from D-Code to a C-Code, he was stripped of his right to 20 hours of out-of-cell time per week, and received only 5 hours of out-of-cell time per week for the 89-week period that he remained at SCI-Greene. At approximately $56 per hour for each of the 15 hours per week that he was deprived of out-of-cell time, Mr. Talley is entitled to $75,000 in compensatory damages.

Pl's Pretrial Statement, at 7-8 (ECF No. 155). In support of his position, Plaintiff cites two Ninth Circuit cases, an Eighth Circuit case, an Eleventh Circuit Case, and an Eastern District of Pennsylvania case, *Castle v. Clymer*, 15 F. Supp. 640 (E.D. Pa. 1988),[1] none of which are binding on this Court.

The Prison Litigation Reform Act ("PLRA") expressly provides that "[n]o Federal civil action may be brought by a prisoner confined in jail, prison, or other correction facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury[.]" 42 U.S.C. § 1997e(e). The Court of Appeals for the Third Circuit has not ruled upon the narrow issue of whether an <u>award</u> of damages for mental harm - as opposed to whether a <u>claim</u> can be brought - is precluded absent a jury finding of physical injury. While it is clear that within the Third Circuit, under the PLRA, a prisoner must suffer a physical injury to <u>bring</u> a claim based solely upon mental or emotional injury, *Mitchell v. Horn*, 318 F.3d 523 (3d Cir. 2003),

> [i]t is not entirely clear that Section 1997e(e) precludes an <u>award</u> of damages for

---

[1] The Court finds that Plaintiff's reliance on these five cases is misplaced. Importantly none of the decisions discuss the applicability of the PLRA as to compensatory damages. Further, it does not appear that the plaintiff in *Hazel* was incarcerated at the time he filed his complaint thereby precluding the applicability of the PLRA to his compensatory damages; the complaint in *H.C. ex rel Hewett v. Jarrad* was filed before the enactment of the PLRA, the plaintiff in *Thompson* was awarded compensatory damages for the loss of personal property, which was a calculable and ascertainable loss, and the plaintiff in *Castle* was awarded compensatory damages for the loss of his para-law library clerk position as a result of being retaliatorily transferred to a new facility, also a calculable and ascertainable loss.

emotional injury absent a <u>jury finding</u> of physical injury; rather, the statute focuses upon the pretrial stage, by precluding the prisoner from <u>bringing</u> an action seeking damages for emotional injury absent a <u>prior showing</u> of physical injury. A narrow reading of the statute's language arguably accords with the statutory purpose of decreasing the number of inmate suits and enabling the pretrial dismissal of such suits where only emotional injury is alleged: Under this view, if a plaintiff has survived summary judgment by pointing to evidence that would enable a reasonable jury to find physical injury, it would not offend the statute's purpose to permit the jury to award damages for emotional distress even if the jury did not find physical injury. However, because it is far from clear that this view will ultimately prevail, the safer course may be to incorporate the physical injury requirement into the jury instructions.

Model Civ. Jry. Inst. § 4.8.1 cmt. n. 126 (3d Cir. July 2019) (emphasis added).

The Court is not persuaded that Plaintiff suffered a "calculable and ascertainable loss" as a result of the alleged retaliation when his mental health status code was changed, but rather finds that his claims are consistent with a claim for nominal damages. As this Court reads the complaint, "the only actual injury that could form the basis he seeks would be mental and/or emotional injury." *Allah v. Al-Hafeez*, 226 F.3d 247, 251 (3d Cir. 2000) ("Allah seeks substantial damages for the harm he suffered as a result of defendants' alleged violation of his First Amendment right to free exercise of religion. As we read his complaint, the only actual injury that could form the basis for the award he seeks would be mental and/or emotional injury. . . . Accordingly, Allah's claims for compensatory damages are barred by § 1997e(e). . . . [T]he allegations in Allah's complaint are consistent with a claim for nominal damages . . . .").

Accordingly, Defendants' motion is **GRANTED.**

7. <u>Defendants' motion in limine to preclude any evidence of the Disability Rights Network Settlement Agreement and the Testimony of Angus Love and Alexandra Morgan-Kurtz (ECF No. 170).</u>

Defendants seek to preclude evidence of the Disability Rights Network Settlement Agreement and testimony related thereto. They argue that the settlement agreement is not an

9

issue in this case, there is no claim that the settlement agreement controls the outcome of this case, nor were the parties to this case parties to the settlement agreement. The issue in this case is whether Defendants changed Plaintiff's stability code in retaliation for a grievance filed by the Plaintiff.

Plaintiff argues that he is not offering the settlement agreement or related testimony "to substantiate Plaintiff's retaliation, or some other, claim. Rather, Plaintiff intends to offer the Settlement Agreement as evidence of the policies and procedures governing inmate mental health status at the time Plaintiff's mental health stability code was downgraded from D-code to a C-code and to dispute the credibility of Defendants' contention that the down grading was made in service to some penological interest." (ECF No. 198, p. 2).

Fed. R. Evid. 401 provides that "evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." The Court finds that evidence of the settlement agreement and related testimony is not relevant in this case. Even if it were relevant, its probative value is substantially outweighed by a danger of confusing the issues, misleading the jury, and undue delay pursuant to Fed. R. Evid. 403.

Defendants' motion to preclude any evidence of the Disability Rights Network Settlement Agreement and the Testimony of Angus Love and Alexandra Morgan-Kurtz is therefore **GRANTED**.

Further, it appears that the definition of Serious Mental Illness and the privileges to which a D roster inmate is entitled are agreed upon by the parties and may therefore be admitted as a part of the parties' stipulations.

8. <u>Defendants' motion in limine to preclude testimony of Department of Corrections Secretary John Wetzel (ECF No. 171).</u>

Defendants seek to preclude the testimony of Department of Corrections Secretary John Wetzel.  Defendants argue that Secretary Wetzel is outside the Court's subpoena range, that he is not a defendant in this case, and that as a high government official he cannot be compelled to testify as a witness absent extraordinary circumstances, which are not present here. Defendants assert that extraordinary circumstances are subject to a five part test:  (1) whether the testimony is necessary to obtain relevant information that is not available from another source; (2) whether the official has first-hand information that could not be reasonable obtained from other sources; (3) whether the testimony is essential to the case; (4) whether the [testimony] would significantly interfere with the ability of the official to perform his or her government duties; and (5) whether the evidence sought is available through an alternative or less burdensome means. *Johnson v. Att'y Gen. of State of N.J.*, 2015 WL 4915611 at *3 (D.N.J. 2015).

Plaintiff responds that that even though Secretary Wetzel is outside the 100 mile-range, he could attend the trial without "substantial expense" and could appear by video pursuant to the Court's earlier order. (ECF No. 200). He  also argues that Secretary Wetzel's testimony is the only DOC witness it will call regarding the Disability Rights Network litigation and Settlement Agreement as he was the sole defendant in that case and has necessary firsthand knowledge.

Because the Court has ruled that no evidence or testimony regarding the Disability Rights Network litigation and Settlement Agreement will be admissible, Plaintiff's argument as to Secretary Wetzel's necessary firsthand knowledge regarding those matters is now without weight.  Further, the Court finds that any evidence of relevant policies is available from other sources, Secretary Wetzel has no relevant firsthand knowledge that cannot be obtained from

other sources, Secretary Wetzel's knowledge is not essential to the case, and any policy evidence sought from him is available through an alternative or less burdensome means.

Therefore, Defendants' motion in limine to preclude testimony of Department of Corrections Secretary John Wetzel is **GRANTED**.

9. Defendants' motion in limine to allow testimony and evidence of Plaintiff's misconducts (ECF No. 172).

**GRANTED**, in compliance with the Court's ruling on Plaintiff's motion in limine at ECF No. 178.

10. Defendants' motion to preclude testimony of Major Curtis Grice and Lt. Matthew Luciano (ECF No. 177).

Defendants seek to preclude the testimony of Major Curtis Grice and Lt. Matthew Luciano. Plaintiff proffers these witness as to testify regarding alleged physical assaults against Plaintiff by corrections officers and Plaintiff's alleged suicidal tendencies during a time he was on temporary transfer to SCI-Benner. Defendants argue that Major Grice is outside of the Court's subpoena range and that the proffered testimony is irrelevant. They also argue that testimony about physical assaults by non-Defendants at a place hundreds of miles away, even if relevant, would be unduly prejudicial.

Plaintiff responds that the proffered testimony is relevant in an effort to counter and refute Defendants' efforts to implicate manipulative behavior by Plaintiff. (ECF No. 201).

The issue in this case is not whether Defendants were correct in their assessment of the Plaintiff's mental health status, the issue is whether he was changed from stability code D to C because of a retaliatory motive by Defendants. The proffered evidence is not relevant to the issue in this case. Even if it were relevant, its probative value is substantially outweighed by

a danger of confusing the issues, misleading the jury, and undue delay pursuant to Fed. R. Evid. 403.

Therefore, Defendants' motion to preclude testimony of Major Curtis Grice and Lt. Matthew Luciano is **GRANTED**.

11. <u>Defendants' motion in limine to preclude punitive damages. (ECF No. 186)</u>

Defendants seek to preclude Plaintiff's request for punitive damages arguing that "there will be no evidence at trial that Defendants acted with evil motive or acted with reckless or callous indifference" or, in the alternative, that "the trial be bifurcated and that Plaintiff be precluded from litigating his punitive damages claim during the liability stage." (ECF No 186 at 1-2). Plaintiff responds that he has alleged that Defendants deliberately retaliated against him for exercising his First Amendment rights when he filed a grievance, and has alleged that Defendants' conduct rises to the level entitling him to punitive damages. As such, the Court should not exclude Plaintiff's claim for punitive damages and should allow Plaintiff to present it to the jury.

The Court agrees with Plaintiff. The United States Supreme Court has held that "[a] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Courts within the Third Circuit have routinely permitted punitive damages claims to proceed to a jury in prisoner litigation. If Plaintiff succeeds in proving his claim of retaliation, which has been adequately alleged, then he may be entitled to recover punitive damages based on Defendants' "evil motive or intent" or "reckless or callous indifference to his federally protected rights." Accordingly, at this time, Defendants' motion is **DENIED**

13

**WITHOUT PREJUDICE** to Defendants raising the issue again at the close of trial. The Court plans to present to the jury the punitive damage claim. However, the Court will instruct the jury that it cannot award punitive damages unless if finds that Defendants acted in a reckless manner.

Federal Rule of Civil Procedure 42(b) provides that a court may order a separate trial on separate claims "for convenience, to avoid prejudice, or to expedite and economize." The decision to bifurcate is left to the trial court's discretion after weighing "the various considerations of convenience, prejudice to the parties, expedition, and economy of resources." *Emerick v. U.S. Suzuki Motor Corp.*, 750 F.2d 19, 122 (3d Cir. 1984). Plaintiff's retaliation claim and his claim for punitive damages will have significant overlapping evidence. After weighing the various considerations, the Court concludes that bifurcating the punitive damage claim is unnecessary. Accordingly, Defendants' request to bifurcate the issue of punitive damages is **DENIED**.

12. <u>Defendants' motion in limine to preclude any evidence of the Department of Justice Investigation (ECF No. 190).</u>

Defendants seek to preclude any evidence of the Department of Justice Memoranda "Investigation of the Pennsylvania Department of Corrections' Use of Solitary Confinement on Prisoners with Serious Mental Health Illness and/or Intellectual Disabilities" and "Investigation of the State Correction Institute at Cresson and Notice of Expanded Investigation" ("DOJ Memoranda").

Plaintiff argues that the DOJ Memoranda "directly contravene Defendants' position" as to why Plaintiff's stability code was changed. (ECF No. 212 at 2). Plaintiff argues that the DOJ memoranda includes a finding "that a very significant number of the prisoners currently designated as not having a SMI and thus are assigned to PDOC's second category indeed have

14

SMI . . . ." (ECF No. 212.) The DJO also found that SCI-Greene, the facility where the alleged retaliation took place, "is the facility using solitary confinement on the greatest number of prisoners by far." *Id.* Plaintiff argues that the DOJ Memoranda "go directly to the issue of why Plaintiff's stability code was changed." *Id*.

Further, Plaintiff argues that the DOJ Memoranda is relevant to Plaintiff's claim of punitive damages and the Memoranda "detail a system-wide failure on the part of the DOC to properly diagnose inmates suffering from mental illness." *Id*. at 3. "The Memoranda further demonstrates the Defendants' deliberate indifference to inmate mental health and disregard of the policies and procedures established to treat and manage inmates with mental illnesses at all levels.

After careful consideration, the Court concludes that for the same reasons that any evidence of the Settlement Agreement will be excluded, the DOJ Memoranda will likewise be excluded. Under Fed. R. 401, the Court finds that evidence of DOJ Memorandum and related testimony is not relevant in this case. The issue in this case is not whether Plaintiff was given proper mental health treatment. The sole issue in this case is whether the change in Plaintiff's mental status code occurred as a result of a retaliatory motive by Defendants. Further, even if the DOJ memoranda were relevant, the probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, and undue delay pursuant to Fed. R. Evid. 403. Therefore, this motion is **GRANTED**.

So **ORDERED** this 7th day of November, 2019.

BY THE COURT:

s/Cynthia Reed Eddy
Cynthia Reed Eddy
Chief United States Magistrate Judge

cc: All Counsel of Record
    (via ECF electronic notification)